## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMENTUM SERVICES, INC.<br><br>v.<br><br>THE UNITED STATES | Case No. __25-690 C__ |

## COMPLAINT

COMES NOW Plaintiff, Amentum Services, Inc. ("Amentum"), by counsel, and for its causes of action against Defendant, the United States of America, states:

### Introduction

1. The Department of the Navy awarded a contract to Amentum for maintenance services for certain F-16 aircraft. Under the contract, the Performance Work Statement ("PWS") establishes various performance metrics, including a Mission Capable ("MC") metric that 75 percent of assigned aircraft be in a flyable condition. The contract also specifies a minimum manning staffing level. If, after the first six months of performance, the MC metric is not met, then the Navy can assess deductions from certain firm-fixed prices included in the contract. If Amentum is unable to meet the MC metric for reasons outside of Amentum's control, then the contract allows Amentum to request that the Government grant relief ("Government Relief" or "GR") from the deductions.

2. Amentum sought GR for the months of March through December 2024 primarily because the F-16 jet engines and other critical parts that are the sole responsibility of the Government or other third parties to supply to Amentum were not available in sufficient numbers to achieve the MC performance metric. Despite these facts, the Government denied Amentum's

1

request for GR, resulting in contract price deductions of $16,952,713.73.

3. This case involves Amentum's challenges to the Government's wrongful denials of Amentum's requests for GR and seeks a judgment that Amentum was entitled to GR from the MC metric for the months of March through December 2024 and payment of the amounts wrongfully deducted.

## Parties

4. Amentum Services, Inc. is a Delaware corporation with its principal place of business currently at 4800 Westfields Blvd., Suite 400, Chantilly, VA 20151.

5. Defendant is the United States of America, its agents, officers, and employees in their official capacities, acting through the Department of the Navy, specifically the Naval Air Systems Command ("Government" or the "Navy").

## Jurisdiction

6. Amentum files this appeal under the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-09 ("CDA") and the Tucker Act (28 U.S.C. § 1491) of ten Government claims arising under the contract and from the Government's denial of Amentum's requests for Government Relief for each month from March through December 2024. The Government's denials of GR were a demand for money in the form of monthly contract price deductions totaling $16,952,713.73.[1]

7. By email dated March 20, 2024, Amentum submitted its request for GR for

---

[1] Even though the Government's denials of Amentum's requests for Government Relief are not labeled as contracting officer final decisions and do not include contractor appeal rights pursuant to 41 U.S.C. § 7103, Amentum files this appeal as the Government's denials of Government Relief are final and were accompanied by a contract requirement that Amentum remove money from its invoices equal to the deductions assessed by the Government, which may be a Government claim subject to appeal under the Contract Disputes Act.

March 2024. By response dated April 24, 2024, the Government denied Amentum's request for GR for March 2024. Amentum sought reconsideration for March 2024 by email dated May 20, 2024. By email dated June 4, 2024, the Government denied Amentum's request for reconsideration for March 2024.

8. Amentum's requests for GR for the months of April through December 2024 all post-date its submission for GR for March 2024 and are less than 12 months from the date of filing this Complaint.

9. All Government denials of Amentum's requests for GR for the months of April through December 2024 post-date the Government's denial for March 2024 and are less than 12 months from the date of filing of this Complaint.

10. Less than 12 months have elapsed since Amentum received the Government denials of Amentum's requests for GR for the months of March through December 2024.

11. Accordingly, Amentum timely appeals the Government's claims in denying Amentum's various GR requests and corresponding assessment of money damages in the form of contract price reductions in accordance with 41 U.S.C. § 7104(b)(3).

## Facts

### A. Relevant Contract Provisions

12. The Government awarded Contract No. N00421-23-D-0012 (the "contract") to Amentum on June 15, 2023.

13. The PWS requires Amentum to provide "Organizational, selected Intermediate, and limited Depot level maintenance, and logistics support services for the Navy F-16A/B/C/D aircraft based on Naval Air Station (NAS) Fallon, NV and Lemoore, CA" in accordance with "applicable Organizational, Intermediate and Depot level maintenance manuals,

COMNAVAIRFORINST 4790.2 (series), NAVAIRINST NAVAIR-00-25-300 (series), and other applicable directives."

14.    The relevant Contract Line Items ("CLINs") are Firm Fixed Price ("FFP") CLINs 0002 and 0102 (VMG O&I Maintenance) and 0003 and 0103 (Fallon Additional Aircraft).

15.    CLIN 0002 covers F-16 Aircraft "O" and "I" Level Maintenance at NAS Fallon, NV for a monthly fixed price based on 30 aircraft for the base year of the contract.

16.    The Government orders maintenance for additional aircraft at a fixed price per aircraft under CLIN 0003 for the base year of the contract.

17.    For Base Period 2, beginning September 2024, the relevant CLINs are 0102 (VMG O&I Maintenance) for a monthly fixed price based on 30 aircraft and CLIN 0103 (Fallon Additional Aircraft) at a fixed price per aircraft.

18.    During the base year of the contract, NAS Fallon had 41 F-16s each month (30 base aircraft under CLIN 0002 and 11 additional F-16s under CLIN 0003).

19.    For September 2024 through December 2024, NAS Fallon had 43 F-16s each month (30 base aircraft under CLIN 0102 and 13 additional F-16s under CLIN 0103).

20.    Contract Section H1 - Mission Capable (MC) Reduction states that "[t]he Contractor shall maintain a 75% MC aircraft per month per site. Failure to achieve the required MC rate, as defined in [PWS, Section 11.0], will result in a 10% percent [sic] reduction to the corresponding site CLIN and site additional aircraft CLIN for the corresponding month."

21.    Section H1 further specifies that payment reductions pursuant to the MC Reduction clause would not be made until after sixth full month of contract performance. The PWS and Quality Assurance Surveillance Plan ("QASP"), both attached and incorporated into the contract, describe the MC rate as a percentage of aircraft that are available for missions (*i.e.,*

4

"up aircraft").

22.     Contract Section H1 – Minimum Manning Reduction ("MMR") states that the contractor's monthly payment for the CLINs associated with the manning shortfall "shall be reduced equal to the percentage below the proposed manning and additional aircraft manning" for the transition period through completion of the sixth full month of performance.

23.     After completion of the sixth full month of performance, the MMR remains in effect but can be avoided—even if the contractor does not meet minim manning—if the contractor achieves MC via its own performance or is granted GR for the months in question. If these conditions are met, then no deductions are to be applied for the MC metric or the MMR.

24.     Various sections of the contract discuss the basis and process for GR. For example, Section 6 of the QASP provides relief from the MC metric and associated deductions if a contractor establishes that the failure to meet MC is due to causes beyond its control. Similarly, Section 11.0 of the PWS titled "Performance Metrics" states, in relevant part:

> *When a metric is not met due to factors outside of the Contractor's control*, the Contractor shall provide documented evidence of such for each applicable metric and submit a request for Government relief (Enclosure (2) of QASP) in writing to the PCO IAW CDRL A032. The PCO will notify the Contractor in writing of the determination to approve or disapprove the request for relief. Government relief aircraft will be counted as an up aircraft.

25.     The contract provides that GR requests should be submitted using Enclosure (2) of the QASP, a form that requires the contractor to provide a "Narrative" and "List of attached documentation." QASP Enclosure (2) also includes additional fields for the Contract Maintenance Monitoring Team's ("CMMT") comments and signature (1st Endorsement), the Maintenance Officer's comments and signature (2nd Endorsement), and the COR/PCO's comments and digital signature (Final Decision).

**B.     Government Reports Demonstrate the U.S. Government's Long-Standing Challenges Meeting the Mission Capable Metric for the F-16 Over a Decade**

26.    The difficulties in achieving the MC metric are well-known across the U.S. military, as are the reasons.  Independent reports by the U.S. Government Accountability Office ("GAO"), the investigative arm of the U.S. Congress, state that the U.S. Navy, as well as other military branches, have struggled for more than a decade to maintain their aircraft in MC status due to the age of their fleets, a lack of parts, and depot maintenance delays including engine overhauls.[2]

27.    In a November 2022 report on Aircraft Mission Capable Goals, GAO found that for fiscal years 2011 through 2021, the U.S. Air Force ("USAF") never met the MC metric for the F-16 aircraft.[3]  According to GAO, this circumstance was primarily a result of the aging F-16 aircraft—many of which were manufactured in the 1970s—service life extension, unexpected replacement of parts and repairs, lack of access to technical data, delays in depot maintenance, unscheduled maintenance, diminishing manufacturers or suppliers of parts, parts obsolescence, and parts shortages and delays.

28.    The same causal factors for not meeting the MC goals documented in the GAO Report apply to the contract held by Amentum, including aging aircraft, service life extension, unexpected replacement of parts and repairs, diminishing manufacturers or suppliers of parts, parts obsolescence, and parts shortages and delays.

---

[2] *See, e.g.,* U.S. Government Accountability Office, *Weapon System Sustainment: Aircraft Mission Capable Goals Were Generally Not Met and Sustainment Costs Varied by Aircraft,* GAO-23-106217 (Nov. 2022); U.S. Government Accountability Office, *Air Force and Navy Aviation: Actions Needed to Address Persistent Sustainment Risks*, GAO-22-104533 (June 2022).

[3] *See* n.2, *supra* (GAO-23-106217).  Although GAO analyzed USAF F-16s, the Navy acquired 26 aircraft from the USAF between April 2022 and December 2022.  In any event, the issues afflicting the F-16s are the same regardless of which military branch owns the planes.

29. The fact that the USAF itself, as the original buyer of the F-16 aircraft, cannot meet the MC metric illustrates the challenges the Navy accepted when it acquired 26 aging F-16C/Ds in 2022 that were planned for retirement. The 26 F-16C/D aircraft were added to the Navy's current fleet of 14 older F-16A/B aircraft.

30. The age of the F-16 aircraft supported under the contract range in age from 32 to 41 years of age.

### C. Amentum Performed Under the Predecessor Contract and the Government Granted Amentum's Requests for Government Relief on Similar Facts

31. Amentum held the predecessor contract (No. N00019-15-D-0001 (02/01/2015 – 01/31/2021)) and bridge contracts (No. N00421-21-D-0014 (02/01/2021 – 03/31/2022) and No. N00421-22-D-0093 (04/01-2022 – 09/30/2023)).

32. Under those contracts, Amentum was responsible for the organizational and selected intermediate ("O&I") maintenance of the Navy's F-16A/Bs and other aircraft. Those contracts also included a MC metric and GR requirements, although those contracts did not include a provision allowing the Government to assess financial deductions for not meeting MC.

33. As in the present contract, the MC rate was used as a Contractor Performance Assessment Report ("CPAR") grading factor.

34. The Government routinely granted GR on the predecessor contracts when Amentum demonstrated that the issues keeping aircraft from attaining MC status were outside of Amentum's control.

35. These issues included service life extensions, unexpected replacement of parts and repairs, diminishing manufacturers or suppliers of parts, parts obsolescence, and parts shortages and delays – the same systemic issues identified by GAO affecting F-16 and other aircraft.

**D.    The Government Granted Government Relief During the First Six Months of Contract Performance, When MC Reductions Were Inapplicable**

36. During the first six months of performance, the Government granted GR for each month due to issues outside of Amentum's control, such as the unavailability of parts necessary to repair aircraft and Amentum achieved the 75 percent MC performance metric, adjusted with GR.

37. During the first six months of contract performance, the contract did not allow the Government to reduce Amentum's payments if Amentum was unable to meet the MC rate.

38. As previously noted, meeting MC (with or without GR) during the first sixth month had no impact on the MMR which could apply independently of the MC metric.

39. In early March 2024, as the sixth full month of performance was ending, the Government requested that Amentum use a new seven-part questionnaire for submitting future requests for GR, in addition to or as an expansion of, the QASP Enclosure 2 form.

40. The PCO never issued a bilateral or unilateral written modification directing this change.

41. The new seven-part questionnaire required Amentum to analyze, compile, and summarize extensive information and answer the following for each aircraft for which it sought GR:

   1. Request for Government relief (including issues, timeline, etc.)
   2. Is the request for Government relief the only issue with the BUNO (any other maintenance issues)?
   3. When did Amentum know of the issue?
   4. Is relief being requested for a Federal Supply System (FSS) part?
   5. If the part is not available via FSS did Amentum request authorization to buy via direct parts per paragraph 7.1.2 of the PWS?
   6. If the part is available via FSS did Amentum review if the part is available from a Government approved Direct Parts Vendor (s) via requesting from the PMA/FST (add email with cc of CMMT and COR)?

7. If the part is available, please provide the cost and schedule delta7. Is there any opportunity for cannibilization [sic] of another aircraft?

42. The Government began to deny GR starting on the seventh month of performance when the MC Reduction became effective and when the MMR would not apply if Amentum met the MC performance metric.

43. The unavailability of engines and other parts supplied by the Government and others, which constituted the primary grounds for granting Amentum GR on the predecessor contracts and during the first six months of performance, had not changed for the months of March through December 2024.

### E. Amentum Is Entitled to Government Relief for March 2024

44. Amentum requested GR for certain aircraft for March 2024 based on the unavailability of a variety of parts including (1) F-16 engines, (2) other backordered parts (*e.g.*, bearings, canopy manual drive assemblies, wiring harnesses, interface units, among others), (3) Government furnished equipment necessary to complete maintenance (*e.g.*, seat cranes), and (4) planning and estimating services ("P&E"), and in service repairs ("ISR").

45. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $935,685.44 from Amentum's March 2024 invoices.

46. Had GR been granted as requested by Amentum, the adjusted MC rate for March would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### F. Amentum Is Entitled to Government Relief for April 2024

47. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) wire

harnesses, (3) canopy manual drives, and (4) other critical parts.

48. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $1,890,487.65 from Amentum's April 2024 invoices.

49. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

G. **Amentum Is Entitled to Government Relief for May 2024**

50. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) canopy actuators, and (4) other critical parts.

51. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $1,884,575.31 from Amentum's May 2024 invoices.

52. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

H. **Amentum Is Entitled to Government Relief for June 2024**

53. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) wire harnesses, (4) speed break actuators, and (5) other critical parts.

54. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $1,818,799.88 from Amentum's

June 2024 invoices.

55. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

**I.  Amentum Is Entitled to Government Relief for July 2024**

56. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) signal processors, (4) main landing gear assemblies, and (5) other critical parts.

57. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $1,731,592.13 from Amentum's July 2024 invoices.

58. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

**J.  Amentum Is Entitled to Government Relief for August 2024**

59. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) signal acquisition units, (4) situational awareness displays, and (5) other critical parts.

60. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in a deduction of $1,667,664.34 from Amentum's August 2024 invoices.

61. Had GR been properly granted as requested by Amentum, the adjusted MC rate

would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### K. Amentum Is Entitled to Government Relief for September 2024

62. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) signal acquisition units, (4) multifunction displays, and (5) other critical parts.

63. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in deductions of $1,721,003.74 from Amentum's September 2024 invoices.

64. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### L. Amentum Is Entitled to Government Relief for October 2024

65. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) multifunction displays, (4) signal acquisition units, and (5) other critical parts.

66. The Government denied Amentum's GR requests such that the adjusted MC rate (with GR) was less than 75 percent, resulting in deductions of $1,737,145.36 from Amentum's October 2024 invoices.

67. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### M. Amentum Is Entitled to Government Relief for November 2024

68. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) multifunction displays, (4) signal acquisition units, and (5) other critical parts.

69. The MC rate adjudicated by the Government with GR was less than 75 percent for November, resulting in deductions of $1,775,577.76 from Amentum's November 2024 invoices.

70. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### N. Amentum Is Entitled to Government Relief for December 2024

71. Amentum requested GR for certain aircraft due to the unavailability of major components and parts outside of Amentum's control, including (1) F-16 engines, (2) IFF transponders, (3) multifunction displays, (4) signal acquisition units, and (5) other critical parts.

72. The MC rate adjudicated by the Government with GR was less than 75 percent for December, resulting in deductions of $1,790,182.12 from Amentum's November 2024 invoices.

73. Had GR been properly granted as requested by Amentum, the adjusted MC rate would have been 75 percent or greater and no deductions would have been assessed for MC or MMR.

### Cause of Action

#### Count I – Breach of Contract

74. Amentum repeats and re-alleges here the allegations as set forth in paragraphs 1 through 73 above.

75. Amentum timely submitted various requests for GR from March through

December 2024.

76. Amentum was entitled to GR for the months of March through December 2024 under the facts and under the contract.

77. The Government breached the contract by denying GR for the months of March through December 2024, resulting in the assessment of deductions per month in the amounts stated above.

78. In adjudicating Amentum's requests, the Government imposed additional documentation and evaluation requirements on Amentum that were not part of the original solicitation or required by the contract.

79. Amentum suffered substantial damages from the Government's improper denials and adjudication of GR in the amount of $16,952,713.73, which is the total of the amounts per month stated above.

## **Prayer for Relief**

Wherefore, Amentum respectfully requests this Court to enter judgment in Amentum's favor, deny the Government's claims with prejudice, and grant Amentum the following relief under Count I, stated in the alternative:

    i. A judgment under Count I finding that Amentum is entitled to GR for the months of March through December 2024;

    ii. A judgment under Count I finding that the Government breached the contract by denying GR for the months of March through December 2024;

    iii. A judgment under Count I ordering the Government to pay Amentum the amount of $16,952,713.73, which is equal to the total deductions wrongly assessed by Government for March through December 2024, and for each individual month in the amount

stated;

    iv.    A judgment awarding to Amentum any costs to which it may be entitled under statute, regulation, or rules of court; and

    v.    A judgment providing such other relief as the Court deems appropriate.

## **Affirmative Defenses**

Amentum asserts the following affirmative defenses in response to the Government's purported claims and reserves the right to assert additional affirmative defenses based on information obtained through investigation or the discovery process:

1. The Government's claims are barred by the Government's failure to state a claim.

2. The Government's claims are barred by the doctrine of course of performance.

3. The Government's claims are barred by the doctrine of first material breach.

4. The Government's claims are barred by the doctrine of equitable estoppel.

5. The Government's claims are barred by the doctrine of mutual mistake.

Amentum specifically denies all allegations, if any, and conclusions of law, if any, to which it did not specifically reply in response to the Government's purported claims.

    Respectfully submitted,

    */s/ Edmund M. Amorosi*
    Edmund M. Amorosi
    *Counsel of Record*
    HAYNES AND BOONE LLP
    8000 Towers Crescent Drive, Suite 900
    Tysons, Virginia 22182
    Tel: 703-847-6300
    Fax: 703-847-6312
    E-Mail: edmund.amorosi@haynesboone.com

Date: April 23, 2025

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 23rd day of April 2025, a copy of the foregoing Complaint was filed electronically in the Court's electronic case filing system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Edmund M. Amorosi*
Edmund M. Amorosi